No. 110,047

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

LAURIE HERRON,
*Appellant.*

SYLLABUS BY THE COURT

1.

A defendant's ability to pay is a proper factor for a court to take into account in setting the total amount of restitution the defendant must pay and any periodic payment he or she must make as a condition of probation.

2.

Poverty can be a sufficient legal basis, depending on the facts of a particular case, to determine that no restitution plan would be viable.

3.

In this case, where the defendant could not possibly pay off the amount of restitution within the statutorily established probation period and where it would take 57 years to pay the restitution with the monthly payment amount suggested by the State, ordering that total amount of restitution without providing any suggested payment plan is unworkable and unreasonable.

Appeal from Douglas District Court; SALLY D. POKORNY, judge. Opinion filed October 24, 2014. Vacated and remanded.

*Reid T. Nelson*, of Capital and Conflicts Appeals Office, of Topeka, for appellant.

*Patrick J. Hurley*, assistant district attorney, *Charles E. Branson*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before POWELL, P.J., LEBEN and ARNOLD-BURGER, JJ.

LEBEN, J.: Laurie Herron appeals from the district court's order requiring her to pay $6,864.10 in restitution to Oxford House to make amends for forging its checks and withdrawing money from its bank account without authorization. Herron argues that the district court abused its discretion by not considering that she only makes $680 per month before taxes and child support are subtracted when it ordered her to pay restitution and determined that repaying the full amount would be workable.

We agree. Herron certainly cannot pay $6,864 in restitution during the 18-month term of her probation. Even if Herron paid at the modest rate of $10 per month, an option the State suggested could be workable, she would be paying restitution for the next 57 years. That isn't workable. Poverty can justify reducing or eliminating a defendant's obligation to pay restitution, and the district court erred by holding otherwise. Accordingly, we vacate the district court's restitution order and remand this case so that a workable restitution order may be entered.

FACTUAL AND PROCEDURAL BACKGROUND

Herron was arrested on three counts of forgery and one count of theft after she made unauthorized withdrawals of $4,966 from Oxford House's bank account for her personal use and unlawfully endorsed $170 of Oxford House's checks. Herron initially entered into a diversion agreement with the State, under which she agreed to pay

2

$6,864.10 in restitution and to do community service; the State agreed not to prosecute her for 24 months.

But Herron's diversion was revoked because she failed to make the restitution payments. As a result, the criminal proceedings against her were reinstated. She was convicted of three counts of forgery and one count of theft and sentenced to 18 months of probation with an underlying prison sentence of 8 months that she would have to serve if she didn't successfully complete her probation.

At sentencing, the State asked for $7,709.94 in restitution for Oxford House. The court asked Herron about her financial situation, and she explained that she worked 37 hours per week at Subway (the maximum allowed there) but had little money left over after she took care of necessities. She also said that child-support payments of about $37 per week were deducted from her paycheck. Because of her low income, Herron requested that the court not make restitution a condition of her probation.

In response, the judge acknowledged Herron's poverty but expressed skepticism about her ability to waive the restitution requirement; the judge ultimately ordered Herron to pay the amount to which she had previously agreed:

> "I understand Ms. Herron's indigency, but I don't know that I can just waive restitution. I can waive court costs and I can waive attorneys' fees, but I don't think I am able to just waive restitution, so I am going to order restitution in the amount that had been previously agreed upon, $6,864.10."

Herron objected and told the court that it could decline to order restitution if it found that restitution would be unworkable. The court ordered an additional hearing so that it could determine restitution then.

3

The court gave Herron permission to miss the second restitution hearing so that she would not have to miss work. But before dismissing Herron, the judge told her that she expected her to make a good-faith effort to repay her debt to Oxford House and discussed extending her probation to allow her time to repay it:

> "If you are working at making a good faith effort to pay what you can on the restitution, I am not going to send you to prison for that, but I still expect that you make a good faith effort on that, and then we will just look at this at the end of 18 months and see where you are on it. You may end up getting your probation extended to give you more time."

Herron then filed a formal motion opposing restitution. In the motion, Herron told the court that monthly payments in any amount would be unworkable because she lives below the poverty line. She explained that she makes $680 a month at Subway but pays $392 per month for her car, health insurance, and rent. Herron said that after buying food at $161.10 per month, she is left with only $32 per week for items like soap, medicine, and socks. Herron contended that she had no resources with which to repay Oxford House and that restitution in her case would be unworkable.

In response, the State contended that indigency alone should not excuse a defendant's obligation to pay restitution. Further, the State argued that while paying restitution may "take a long time . . . that does not make it unworkable." The State suggested that Herron could at least pay $10 per month: "Even if she were to provide $10/month it is something. It would be a slow process, however, it is 'workable.'"

The court decided that Herron should be required to pay restitution and said that poverty alone doesn't excuse the repayment of restitution under Kansas law:

> "The case law is clear that indigency alone is not enough in order to forgive an order of restitution. Ms. Herron is working. I have to agree with the State that it may take a long

4

time to get this restitution paid off, but it's workable at some point and can be paid off. . . . It just needs to become important to her to pay the restitution. So, it is ordered."

Accordingly, the court ordered Herron to pay the amount of restitution that she'd agreed to as part of her diversion: $6,864.10. The district court made no specific order about how this amount should be paid down during the probation period.

Herron appealed the restitution order to this court.

ANALYSIS

Herron argues that the district court erred by ordering her to pay $6,864.10 in restitution to Oxford House because the amount is unworkable in light of her financial circumstances. This court reviews the amount of restitution ordered by a district court for an abuse of discretion. *State v. Hall*, 297 Kan. 709, 711, 304 P.3d 677 (2013). A district court abuses its discretion when it bases its decision on an error of fact or law or when it makes a decision that no reasonable person would agree with. See *State v. Hand*, 297 Kan. 734, Syl. ¶ 2, 304 P.3d 1234 (2013).

Under Kansas law, district courts are instructed to order defendants to pay restitution to the victims of their crimes if they are given nonprison sentences, unless compelling circumstances make paying restitution unworkable. K.S.A. 21-4603d(b)(1) ("[T]he court shall order the defendant to pay restitution . . . unless the court finds compelling circumstances would render a plan of restitution unworkable."). Accordingly, restitution is the rule, and finding that restitution is unworkable is the exception. *State v. Goeller*, 276 Kan. 578, 583, 77 P.3d 1272 (2003). The burden is on the defendant to prove that paying the requested restitution is unworkable. *State v. King*, 288 Kan. 333, 356, 204 P.3d 585 (2009).

5

As an initial matter, the State argues that Herron can't object to the amount of restitution the court ordered because it claims she didn't present evidence of her inability to pay it at the district court. Though the State is correct that in order for this court to consider Herron's argument, she had to have objected to the amount of restitution at the district court, Herron did protest the amount of restitution the State requested at sentencing. See *Goeller*, 276 Kan. at 583. In fact, she filed a formal motion requesting that restitution not be imposed as a condition of her probation, and she testified about her difficult financial circumstances at the initial sentencing hearing. Though Herron wasn't present at the second hearing where the restitution was imposed, she'd already filed a motion explaining why she lacked the ability to pay restitution. Herron therefore sufficiently preserved this issue for our review.

Herron argues that the district court abused its discretion by ordering her to pay an amount of restitution she had demonstrated she could not pay. As we noted, a district court abuses its discretion when its decision is based on an error of fact or law or when no reasonable person would agree with its decision. See *Hand*, 297 Kan. 734, Syl. ¶ 2. The district court abused its discretion in Herron's case because it based its decision on an error of law and because it ordered a restitution amount no reasonable person would agree is workable.

First, the district court's decision was based on an error of law. The district court said that poverty alone could not justify relieving a defendant of her obligation to pay: "The case law is clear that indigency alone is not enough in order to forgive an order of restitution." In support of this proposition, the court cited two cases: *Puckett v. Bruce*, 276 Kan. 59, 73 P.3d 736 (2003), and *King*, 288 Kan. 333. Neither case, however, stands for the proposition that a defendant's poverty alone can't justify relief from restitution repayment.

6

In *Puckett*, the issue was whether the district court had discretion to allow the defendant to retain some money each month in his prison account while collecting the remainder for restitution. The Kansas Supreme Court held that it was within the district court's discretion what amount of restitution it would require a defendant to pay and that it wasn't an abuse of this discretion to leave the defendant with some spending money. 276 Kan. at 62-64.

In *King*, the issue was whether the district court must question a defendant's financial ability to pay restitution when the defendant doesn't argue at sentencing that restitution is unworkable. The Kansas Supreme Court held that because the defendant has the burden to show that restitution is unworkable, the court doesn't have to investigate a defendant's financial circumstances before imposing it. 288 Kan. at 354. Thus, the district court lacked support for its unequivocal statement that poverty can't be the basis for relieving a defendant of the obligation to pay restitution.

More relevant than *Puckett* and *King* is *State v. Schulze*, 267 Kan. 749, 985 P.2d 1169 (1999). In that case, the district court initially entered a restitution order for $14,026.92, but after the defendant made payments for several months (totaling $1,900), the court released the defendant from the remaining obligation, subject to the condition that if the defendant unexpectedly had a dramatic increase in income before his probation ended, the court could reconsider. In that case, the defendant had an annual income of $18,000 a year, was working two jobs, and supported his wife and three school-age children. His telephone had been shut off for nonpayment, the propane to his farmhouse had been cut off for nonpayment, and he was behind on two car payments. The Kansas Supreme Court affirmed the district court's ruling and concluded "that compelling financial circumstances existed which necessitated relief from the sizable bill." 267 Kan. at 752. The court held that the district court had not abused its discretion by considering "Schulze's evidence of his financial difficulties" as a basis for releasing the defendant

7

from further restitution payments. 267 Kan. at 753. *Schulze* confirms that restitution payments may be excused based on a defendant's financial indigency.

Our court also has noted that "a defendant's ability to pay restitution is a relevant factor for a district court to consider in determining whether to order restitution and the proper amount." *State v. Sullivan*, No. 98,799, 2009 WL 596520, at *4 (Kan. App.) (unpublished decision), *rev. denied* 289 Kan. 1285 (2009). That's consistent not only with *Schulze*, but also with *Goeller*, where the Kansas Supreme Court noted that it was the defendant's responsibility to come forward with evidence of his inability to pay. 276 Kan. at 583. If a defendant's inability to pay wasn't intended to be a compelling circumstance that could justify excusing or reducing restitution payments, then the Supreme Court would not have explained that the defendant is responsible for introducing such evidence. If the ability to pay restitution didn't impact restitution, then the evidence Goeller was criticized for *not* introducing would not even have been relevant.

We do not suggest that poverty alone is always a compelling circumstance that should relieve a defendant of the obligation to pay restitution, but poverty alone can justify a decision to not impose restitution or to reduce it. In assuming that it could not, the district court made an error of law and thus abused its discretion by not considering whether Herron's poverty made the amount of restitution she was ordered to pay unworkable.

Second, the district court abused its discretion by finding that the restitution it ordered would be "workable" in light of Herron's financial circumstances. When no reasonable person would agree that a restitution amount would be workable in light of the defendant's financial circumstances, the district court has abused its discretion in setting the amount.

8

Our court has addressed this circumstance in two unpublished decisions: *State v. Burke*, No. 104,014, 2011 WL 3444324, at \*2 (Kan. App. 2011) (unpublished decision); *State v. Orcutt*, No. 101,395, 2010 WL 348281, at \*5-6 (Kan. App.) (unpublished decision), *rev. denied* 290 Kan. 1101 (2010). In *Orcutt*, we held that a district court abused its discretion by ordering a defendant to pay restitution of $625 per month when he made only $980 per month because no reasonable person would find that such high monthly payments would be financially workable given the defendant's income. 2010 WL 348281, at \*5-6. In *Burke*, we held that a district court abused its discretion when it ordered a defendant to pay $14,348 in restitution after acknowledging that she would likely never be able to repay it. 2011 WL 3444324, at \*2.

The district court in *Burke* stated that the defendant should make a "good-faith effort" to compensate the victims of her crimes by paying $5 a month in restitution. 2011 WL 3444324, at \*1-2. In finding that such an order constituted an abuse of discretion, our court noted that if Burke paid $5 per month toward her restitution total, she'd be making payments for 239 years. 2011 WL 3444324, at \*2. We therefore held that no reasonable person would agree with the district court that the amount of restitution Burke was ordered to pay was workable. 2011 WL 3444324, at \*2.

Herron's case is similar to *Burke* or *Orcutt.* Like in *Burke,* if Herron paid the $10 per month the State suggested, she would be making payments for 57 years—an inordinately long time compared to her 18-month probation. Herron was 33 years old at the time the court ordered restitution. While her probation could be extended (giving the court supervisory power over her until payments were made), it's not reasonable to keep someone under court supervision to make restitution payments for 57 years. See K.S.A. 21-4611(c)(7) (allowing the indefinite extension of probation to pay unpaid restitution), later recodified as K.S.A. 2013 Supp. 21-6608(c)(7); *State v. Gordon*, 275 Kan. 393, 402-07, 66 P.3d 903 (2003) (concluding that probation could be extended without a hearing for unpaid restitution, applying K.S.A. 21-4611[c][7]). By contrast, if Herron

attempted to pay the restitution she owed during her 18-month probation, she would be paying $381.34 per month, which would constitute more than half of her total income—obviously an unworkable situation at her income level.

In sum, while our legislature has provided in K.S.A. 21-4611(c)(7) for a potentially indefinite extension of probation to pay court-ordered restitution, K.S.A. 21-4603d(b)(1) requires that the restitution order itself be workable. The dissent suggests that our ruling might result in unpaid restitution. But the entry of high restitution orders that can't be paid in any reasonable time frame would make the workability requirement of K.S.A. 21-4603d(b)(1) meaningless. We must read these statutory provisions together, and read together they balance the competing interests of the payment of restitution to victims of crime and the provision of reasonable requirements to a probation that is to be rehabilitative, not punitive. See *State v. Schad*, 41 Kan. App. 2d 805, 818-20, 206 P.3d 22 (2009).

There is no firmly established line between a workable restitution plan and an unworkable one. But we conclude that no reasonable person would agree that requiring Herron to pay either $6,864.10 in 18 months or $10 a month for the next 57 years is workable. The district court erred here by adopting only a total restitution amount while providing no plan—workable or otherwise—for paying it.

We cannot say what the proper order would be in this case. That is not our role: the restitution amount is set by the district court, exercising its discretion. On remand, the district court might choose to enter a restitution award for the full amount while providing for a payment plan that the defendant could meet and for the defendant to notify the court of any change in income. We also do not determine in this case how long such a probation might be extended to allow additional payments. We have said that keeping the defendant under probation supervision for 57 years—the required length to pay this debt off at $10 per month—would be unreasonable, but where to draw that time-

line cutoff is not before us in this appeal since the district court provided no payment plan at all.

The district court's order requiring Herron to pay $6,864.10 is therefore vacated, and this case is remanded to the district court for a restitution order consistent with this opinion.

*** 

POWELL, J., concurring and dissenting: Relying on *State v. Schulze*, 267 Kan. 749, 753, 985 P.2d 1169 (1999), the majority concludes the district court erred when it held that indigency alone is not enough to forgive an order of restitution. I concur with the majority's conclusion on this point because "[a] trial court has considerable discretion in determining the amount of restitution to be ordered." *State v. Ball*, 255 Kan. 694, 702, 877 P.2d 955 (1994). I also agree that poverty alone does not require a district court to modify a restitution amount in every case and that a plan of restitution which requires a defendant to make restitution payments far in excess the defendant's ability to pay during a standard term of probation is unworkable. See *State v. Orcutt*, No. 101,395, 2010 WL 348281, at *5-6 (Kan. App.) (unpublished decision), *rev. denied* 290 Kan. 1101 (2010).

But I must depart from the majority's holding that the district court abused its discretion in ordering a restitution amount which, given Herron's current limited means, would take her years beyond the standard term of probation to pay off. The majority correctly states our standard of review of a district court's restitution order is highly discretionary then boldly declares no reasonable person would agree with the full restitution order because it could take Herron 57 years to pay off her restitution obligation at the State's suggested rate of $10 a month. Well, I submit the representatives of the people are in a better place to decide what is reasonable, and our legislature has

11

specifically allowed for probation to be continued *indefinitely* so a defendant may satisfy unpaid restitution. See K.S.A. 2013 Supp. 21-6608(c)(7).

More broadly, I am also concerned the majority's holding impermissibly limits a district judge's discretion and effectively applies a means test to restitution. The Kansas Supreme Court has unequivocally declared that "restitution is the rule and a finding that restitution is unworkable the exception." *State v. Goeller*, 276 Kan. 578, 583, 77 P.3d 1272 (2003). Moreover, our Supreme Court has also suggested that imprisonment for a failure to comply with a restitution order does not violate §16 of the Kansas Constitution Bill of Rights provision banning imprisonment for a debt. *State v. Yost*, 232 Kan. 370, 374, 654 P.2d 458 (1982). This is so because imposition of a prison sentence is ultimately due to the crime for which the defendant is convicted, not for a failure to pay a debt. 232 Kan. at 374; see also *State v. Applegate*, 266 Kan. 1072, 1075, 976 P.2d 936 (1999) ("Restitution imposed as a condition of probation is . . . an option which may be voluntarily exercised by the defendant to avoid serving an active sentence.").

Experience tells me that most criminal defendants are either indigent or are, at the very least, of limited means. By declaring a plan of restitution unworkable because it requires a defendant to be on probation far longer than a standard term of probation in order to satisfy a significant restitution obligation, the majority rewrites the law of restitution to become one which essentially forbids the imposition of restitution upon a defendant's showing of indigency, even if a defendant is given years to repay the amount. The other consequence of the majority's holding is that restitution will no longer be "the rule" but the "exception." Many defendants will escape a restitution obligation altogether as they will be unable to pay during their term of probation or for many years thereafter. Other than for bankruptcy and determinations of punitive and exemplary damages, even civil debtors are not given this kind of grace. See generally K.S.A. 60-3701(b)(6) (court may consider financial condition of defendant with respect to punitive and exemplary damages).

12

While remand is necessary so the district court may examine its restitution order in light of Herron's financial circumstances, I see nothing in the law which would prohibit it from reimposing its restitution order. In its discretion, the district court has every right to evaluate whether the defendant has made good-faith efforts to pay down restitution, thus fulfilling the restitution statute's goals of rehabilitation and deterrence. See generally *State v. Reed*, 254 Kan. 52, 60, 865 P.2d 191 (1993) (not abuse of discretion for district court to revoke probation where, among other things, defendant failed to heed probation officer's advice to at least make a nominal monthly payment as a good-faith effort).