NOT DESIGNATED FOR PUBLICATION

Nos. 118,059
118,060
118,061

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

CHRISTOPHER M. JOHNSON,
*Appellant*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; STEPHEN J. TERNES, judge. Opinion filed March 1, 2019. Affirmed.

*Kai Tate Mann*, of Kansas Appellate Defender Office, for appellant.

*Matt J. Maloney*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before ARNOLD-BURGER, C.J., ATCHESON, J., and BURGESS, S.J.

PER CURIAM: In order for a municipal conviction to be comparable to a Kansas offense for criminal history purposes, the elements of the municipal offense must be identical to or narrower than the elements of the comparable Kansas crime. Christopher M. Johnson argues that the district court erred in calculating his criminal history score. He asserts that his Wichita conviction for domestic battery is not comparable to Kansas' domestic battery statute because the Wichita ordinance covers a broader class of people. While this is true, the Wichita domestic battery statute is comparable to Kansas' battery

1

statute as both prohibit identical conduct. Accordingly, it was properly designated a person misdemeanor. Johnson also argues that the district court issued an unworkable restitution plan because he will be in prison and unable to make restitution payments. However, the Kansas Supreme Court has held that the fact that a person is in prison does not render a restitution plan unworkable. Therefore, the district court did not abuse its discretion in ordering restitution.

FACTUAL AND PROCEDURAL HISTORY

Johnson pled guilty to charges in three separate cases: domestic battery in 15 CR 3377; attempted robbery, fleeing or attempting to elude an officer, and aggravated battery in 16 CR 160; and criminal damage to property in 16 CR 1577.

Prior to sentencing Johnson in 16 CR 160, the district court found that Johnson's criminal history score was A. A person's criminal history score is A when the person's criminal history includes three or more adult person felony convictions. K.S.A. 2017 Supp. 21-6809. Every three adult convictions for class A and class B person misdemeanors are rated as one adult conviction of a person felony. K.S.A. 2017 Supp. 21-6811(a). Johnson had two adult person felonies and three person misdemeanors which were converted to a felony. In 16 CR 160, the district court sentenced Johnson to the highest term in the presumptive grid blocks for his crimes, resulting in a 50-month term of imprisonment. The district court also ordered Johnson to pay $20,858 in restitution. In 16 CR 1577, the district court sentenced Johnson to a 17-month term of imprisonment. And, in 15 CR 3377 the court sentenced Johnson to 12 months in jail.

At sentencing, Johnson agreed that $20,858 was an appropriate amount of restitution. However, he challenged whether the restitution payment order was workable. Johnson noted that he had been incarcerated for several months prior to the hearing and that he would continue to be incarcerated for the sentence the court just pronounced.

Because he will be in prison, he asserted that he would not have the capacity to make restitution payments. The district court judge responded:

> "I'm cognizant of the fact that [Johnson's attorney] has made a pretty logical argument. My problem is that the $20,000 or so has to fall on somebody's shoulders. There is a loss there and that loss shouldn't fall on an insurance company. It shouldn't fall on the person who owned the property. If you are the person that damaged it, then you ought to have the responsibility of making it right."

The district court maintained the restitution order at $20,858. The court did not specify when Johnson needed to begin repaying the restitution, and the court did not order him to pay a specific amount every month.

Johnson appealed.

ANALYSIS

*The district court did not err in calculating Johnson's criminal history score.*

Johnson argues that the district court erred in calculating his criminal history score for the purpose of sentencing him in 16 CR 160. He asserts that two of his Wichita domestic battery convictions were improperly scored as person misdemeanors because the Wichita domestic battery statute has elements that are broader than Kansas' domestic battery statute.

Classification of prior offenses for criminal history purposes involves interpretation of the Kansas Sentencing Guidelines Act. Interpretation of a statute presents a question of law over which this court exercises unlimited review. *State v. Wetrich*, 307 Kan. 552, 555, 412 P.3d 984 (2018).

3

In determining an offender's criminal history score, it is sometimes necessary to classify convictions from other jurisdictions. K.S.A. 2017 Supp. 21-6811(e) describes how courts should accomplish this task. An out-of-state crime is "classified as either a felony or a misdemeanor according to the convicting jurisdiction." K.S.A. 2017 Supp. 21-6811(e)(2). The State of Kansas determines whether the crime should be classified as person or nonperson. The sentencing guidelines provide: "In designating a crime as person or nonperson, comparable offenses under the Kansas criminal code in effect on the date the current crime of conviction was committed shall be referred to." K.S.A. 2017 Supp. 21-6811(e)(3). If Kansas does not have a comparable offense, then the out-of-state conviction must be classified as a nonperson crime. K.S.A. 2017 Supp. 21-6811(e)(3). In *Wetrich*, the Kansas Supreme Court held that in order for offenses to be comparable, "the elements of the out-of-state crime must be identical to, or narrower than, the elements of the Kansas crime to which it is being referenced." 307 Kan. at 562.

As a preliminary issue, the State argues that the "'identical or narrower'" definition of comparable as given in *Wetrich* should not apply in this case. The State asserts that the Supreme Court's decision constituted a change in the law. The State cites K.S.A. 2017 Supp. 22-3504(3), which provides that "[a] sentence is not an 'illegal sentence' because of a change in the law that occurs after the sentence is pronounced." This court recently rejected the State's argument and held that *Wetrich* did not change the law. *State v. Smith*, 56 Kan. App. 343, 353, 430 P.3d 58 (2018) ("[T]he Kansas Supreme Court did not change the law in *Wetrich*. Instead, the court's decision is better characterized as reinterpreting the meaning of the term 'comparable offenses' within the [Kansas Sentencing Guidelines Act].").

Moving on to the substantive issue, this court must determine whether the elements of the Wichita domestic battery ordinance are identical to or narrower than a comparable Kansas offense. Johnson had two Wichita convictions for domestic battery. The first conviction occurred in March 2012. The second conviction occurred in October

4

2013. Wichita's domestic battery ordinance, § 5.10.025, was amended in May 2012. Wichita Ord. Nos. 43-180 § 2, 49-256, § 4. The amendment only slightly changed the wording of the statute. The current ordinance, which formed the basis of Johnson's October 2013 conviction, provides:

"(a) Domestic Battery, within the corporate limits of the city, is: (1) knowingly or recklessly causing bodily harm by a family or household member to a family or household member or knowingly or recklessly causing bodily harm by an individual in a dating relationship to an individual with whom the offender is involved or has been involved in a dating relationship or (2) knowingly causing physical contact by a family or household member with a family or household member or knowingly causing physical contact by an individual in a dating relationship to an individual with whom the offender is involved or has been involved in a dating relationship when done in a rude, insulting or angry manner, is guilty of a misdemeanor." § 5.10.025(a).

The ordinance defines "'family or household member'" as

"persons 18 years of age or older who are spouses, former spouses, parents or stepparents and children or stepchildren, and persons who are presently residing together or who have resided together in the past, and persons who have a child in common regardless of whether they have been married or who have lived together at any time. Family or household member also includes a man and woman if the woman is pregnant and the man is alleged to be the father, regardless of whether they have been married or have lived together at any time." § 5.10.025(b).

Finally, the ordinance defines "'dating relationship'" as

"a social relationship of a romantic nature. In addition to any other factors the court deems relevant, the Trier of fact may consider the following when making a determination of whether a relationship exists or existed: nature of the relationship, length of time the relationship existed, frequency of interaction between the parties and the time since termination of the relationship, if applicable." § 5.10.025(c).

The version of the Wichita ordinance in effect at the time of Johnson's March 2012 conviction cannot be located online and is not in the record on appeal. According to the parties, however, the ordinance is only slightly different than the one in effect when he committed his 2013 domestic battery. Instead of covering "dating relationships," the 2012 ordinance used the phrase "domestic partner," meaning a person who is or was "involved in an ongoing intimate relationship with the individual." § 5.10.025 (1996). See *State v. Russ*, No. 115,111, 2017 WL 1821215, at *4 (Kan. App. 2017) (unpublished opinion) (interpreting the same Wichita ordinance that it was also unable to locate).

Johnson compares the elements of Wichita's domestic battery ordinance to Kansas' domestic battery statute. At the time of Johnson's convictions in 16 CR 160, Kansas defined domestic battery as

"(1) [k]nowingly or recklessly causing bodily harm by a family or household member against a family or household member; or

(2) knowingly causing physical contact with a family or household member by a family or household member when done in a rude, insulting or angry manner." K.S.A. 2015 Supp. 21-5414(a).

"'Family or household member'" is defined as

"persons 18 years of age or older who are spouses, former spouses, parents or stepparents and children or stepchildren, and persons who are presently residing together or who have resided together in the past, and persons who have a child in common regardless of whether they have been married or who have lived together at any time. 'Family or household member' also includes a man and woman if the woman is pregnant and the man is alleged to be the father, regardless of whether they have been married or have lived together at any time." K.S.A. 2015 Supp. 21-5414(c)(1).

The Kansas statute and the Wichita ordinance cover identical conduct: (1) knowingly or recklessly causing bodily harm, or (2) knowingly causing physical contact

6

in a rude, insulting, or angry manner. The ordinances also share the same definition of "family or household member." However, the Wichita ordinance protects persons in dating relationships. Kansas' battery statute did not cover dating relationships at the time of Johnson's conviction, although the Legislature has since amended the statute to include them. See K.S.A. 2017 Supp. 21-5414(a). Because Wichita's ordinance protects persons in dating relationships, it is broader than Kansas' domestic battery statute. The same conclusion is true for the old Wichita ordinance. It covered domestic partnerships while Kansas' statute did not.

Johnson is correct that the Wichita domestic battery ordinances are broader than Kansas' statute, and thus they are not comparable. However, that does not necessarily mean that Johnson's sentence is illegal. The State argues that Wichita's domestic battery offense is comparable to Kansas' battery offense. Johnson does not address this argument.

The State's argument is persuasive. Kansas defines battery as "(1) [k]nowingly or recklessly causing bodily harm to another person; or (2) knowingly causing physical contact with another person when done in a rude, insulting or angry manner." K.S.A. 2017 Supp. 21-5413(a). Battery is a person offense. See K.S.A. 2017 Supp. 21-5413(g)(1). Wichita's domestic battery statute covers identical conduct, although it applies to a narrower class of people. Therefore, Wichita's domestic battery statute is identical to or narrower than the Kansas offense of battery and the offenses are comparable. The district court did not err in scoring Johnson's 2013 municipal conviction for domestic battery as a person misdemeanor.

*The district court did not abuse its discretion when it entered a restitution order.*

Johnson also argues that the district court's $20,858 restitution order constituted an abuse of discretion because the amount is unworkable and unreasonable. He notes that while he has some skill in automobile repair, he will be unable to utilize his skills to

7

generate income because he will be in prison for the next five years. Additionally, the district court failed to establish a repayment plan.

Challenges to the amount of restitution and the manner in which it is made are reviewed under the abuse of discretion standard. *State v. Shank*, 304 Kan. 89, 93, 369 P.3d 322 (2016). A judicial action constitutes an abuse of discretion if (1) no reasonable person would take the view adopted by the trial court; (2) the action is based on an error of law; or (3) the action is based on an error of fact. *State v. Marshall*, 303 Kan. 438, 445, 362 P.3d 587 (2015).

A "court shall order the defendant to . . . make reparation or restitution to the aggrieved party . . . unless the court finds compelling circumstances which would render a plan of restitution unworkable." K.S.A. 2017 Supp. 21-6607(c)(2). This statute shows that "restitution is the rule, and finding that restitution is unworkable is the exception." *State v. Herron*, 50 Kan. App. 2d 1058, 1061, 335 P.3d 1211 (2014). Furthermore, the statute's "language makes it clear that the burden is on the defendant to demonstrate that a particular restitution plan is unworkable." *State v. King*, 288 Kan. 333, 356, 204 P.3d 585 (2009).

Johnson's argument is similar to that made in *State v. Alcala*, 301 Kan. 832, 348 P.3d 570 (2015). There, the district court ordered Manuel C. Alcala to pay $43,230.77 in restitution. Alcala argued that the district court abused its discretion in ordering restitution because the restitution plan was unworkable. Like Johnson, Alcala based his argument "on his lengthy prison sentence and limited earning potential while incarcerated." 301 Kan. at 840. The Kansas Supreme Court found no merit in Alcala's argument. The court noted that "[t]he district court did not order Alcala to pay a fixed amount of restitution per month, nor did it explicitly order Alcala to begin payments while incarcerated." 301 Kan. at 840. Alcala failed to present evidence of his inability to pay after his possible parole, and thus the court held that "Alcala failed to sustain his

burden of demonstrating the restitution plan was unworkable." 301 Kan. at 840. The same situation exists here: the district court did not order Johnson to begin paying restitution while incarcerated and Johnson did not provide any evidence that he would be unable to work upon release. Therefore, Johnson failed to show that the district court abused its discretion in ordering restitution.

Johnson asserts that this case is more akin to *Herron*, 50 Kan. App. 2d 1058. There, the district court ordered Laurie Herron to pay $6,864.10 in restitution. Herron argued that she could not afford to make restitution payments in any amount because after paying for her car, health insurance, rent, and groceries, she only had $32 remaining every week. The district court rejected her argument and held that poverty alone was not enough to escape a restitution order. The State suggested that Herron pay $10 per month. Herron appealed, and this court reversed the district court. This court held that the district court made an error of law, which constitutes an abuse of discretion, when it said that poverty alone cannot render a restitution order unworkable. 50 Kan. App. 2d at 1062. This court also found that no reasonable person would agree with the district court that the restitution order was workable in light of Herron's financial circumstances. 50 Kan. App. 2d at 1064. The court explained:

> "[I]f Herron paid the $10 per month the State suggested, she would be making payments for 57 years—an inordinately long time compared to her 18-month probation. Herron was 33 years old at the time the court ordered restitution. While her probation could be extended (giving the court supervisory power over her until payments were made), it's not reasonable to keep someone under court supervision to make restitution payments for 57 years. [Citations omitted.] By contrast, if Herron attempted to pay the restitution she owed during her 18-month probation, she would be paying $381.34 per month, which would constitute more than half of her total income—obviously an unworkable situation at her income level." 50 Kan. App. 2d at 1065.

9

Johnson's case is distinguishable from *Herron*. Johnson did not provide any evidence that he would not be able to pay restitution once he is released from prison. Additionally, the district court in this case did not make the same error of law as the district judge in *Herron*. Johnson's case is more similar to *Alcala*.

The mere fact that Johnson will be in prison for several years does not render the restitution order unworkable. Johnson failed to present evidence of his inability to pay the restitution, and thus the district court did not abuse its discretion in entering the restitution order.

Affirmed.