No. 119,895

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

SAMUEL HENRY,
*Appellant*.


SYLLABUS BY THE COURT


1.

A series of larcenous acts, regardless of the amount and value of the separate parcels or articles taken, and regardless of the time occupied in the performance, may and will constitute, in contemplation of law, a single larceny, provided the several acts are done pursuant to a single impulse and in execution of a general fraudulent scheme.


2.

The single larceny doctrine is a rule of evidence, not a rule of law, which permits but does not require the trier of fact to consider a series of larcenies, embezzlements, or other thefts to be the result of a single larcenous scheme.


3.

The two key elements of the single larceny doctrine are: (1) Separate acts of theft or embezzlement may constitute felony theft if the acts were the result of one larcenous impulse or plan and (2) whether the separate acts were the result of one larcenous impulse or plan is a question of fact to be determined by the jury.


1

4.

The single larceny doctrine is not only limited to instances where multiple misdemeanor takings are charged as a single felony but also permits multiple instances of felony takings to be charged as a single higher severity level felony.

5.

K.S.A. 2019 Supp. 21-6604(b)(1) provides that the district court shall order the defendant to pay restitution, which shall include, but not be limited to, damage or loss caused by the defendant's crime, unless the court finds compelling circumstances which would render a plan of restitution unworkable.

6.

Restitution is the rule and a finding that restitution is unworkable is the exception. The defendant bears the burden of coming forward with evidence of compelling circumstances that render the restitution plan unworkable.

7.

K.S.A. 2019 Supp. 21-6604(b)(1) does not define "unworkable." Courts are to evaluate the workability of a restitution plan on a case-by-case basis. Some of the factors relevant to the court's inquiry will be the defendant's income, present and future earning capacity, living expenses, debts and financial obligations, and dependents. In some circumstances, the amount of time it will take a defendant to pay off a restitution order will also be relevant, especially if the defendant is subject to probation until the restitution is paid in full. In all circumstances, the district court should keep in mind the ultimate goals of restitution:  compensation to the victim and deterrence and rehabilitation of the guilty.

8.

If a defendant is ordered to pay full or partial restitution, K.S.A. 2019 Supp. 21-6608(c)(7) specifically allows for probation to be continued indefinitely as long as the amount of restitution ordered has not been paid.

Appeal from Sedgwick District Court; JOHN J. KISNER JR., judge. Opinion filed February 28, 2020. Affirmed.

*Meryl Carver-Allmond* and *Sam Schirer*, of Kansas Capital Appellate Defender Office, for appellant.

*Matt J. Maloney*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before WARNER, P.J., POWELL, J., and LAHEY, S.J.

POWELL, J.: A jury convicted Samuel Henry of one count of felony theft after he stole money from QuikTrip deposits on 12 different occasions during his employment as an armored truck driver. The district court sentenced Henry to 60 months' probation and ordered he pay $78,315 in restitution. On appeal, Henry claims the single larceny doctrine, which allows multiple takings to be charged as a single crime when committed as part of single criminal impulse or plan, was inapplicable to his case and the State erroneously charged him with a single higher severity level theft instead of 12 lower severity level thefts. As a result, he argues insufficient evidence supports his conviction because each of his individual takings failed to meet the monetary threshold element of the felony theft charged, necessitating the reversal of his conviction. Henry also argues his restitution is unworkable. For reasons we more fully explain below, we disagree with Henry's arguments and find sufficient evidence supports Henry's theft conviction. We also hold the district court's restitution order is not unworkable. Thus, we affirm Henry's conviction and sentence.

3

In May 2016, QuikTrip's corporate office discovered it was missing $78,315. Auditing established that this money was missing due to shortages between the currency deposited in the safes of various Wichita, Kansas, QuikTrip locations and the currency transferred to QuikTrip's corporate bank account. QuikTrip conducted an internal investigation and concluded that no QuikTrip employees took the missing money. So, QuikTrip contacted GardaWorld—the armored truck company contracted to transport money from various QuikTrip locations to the bank to be deposited—to file a claim for the missing deposit amounts.

GardaWorld's internal investigation revealed that Henry, an armored truck driver for the company, was responsible for the missing funds. The investigation exposed 12 occasions between April 16, 2016, and May 21, 2016, when the money deposited into the bank was less than the money placed in the safes at various QuikTrip locations. The specific dates and discrepancies are as follows:

| Date | Amount Missing | Store Stolen From |
|---|---|---|
| April 16, 2016 | $2,182 | 315 |
| April 20, 2016 | $920 | 396 |
| April 25, 2016 | $3,110 | 396 |
| April 27, 2016 | $3,111 | 368 |
| April 30, 2016 | $7,091 | 349 |
| May 2, 2016 | $3,930 | 396 |
| May 2, 2016 | $4,230 | 315 |
| May 4, 2016 | $7,911 | 396 |
| May 7, 2016 | $7,830 | 349 |
| May 7, 2016 | $9,070 | 343 |
| May 14, 2016 | $15,410 | 349 |
| May 21, 2016 | $13,520 | 349 |
| Total Missing: | $78,315 | |

It was initially unclear how Henry had taken the money because the cash arrived at the bank in sealed, tamper-proof QuikTrip deposit bags. However, it was later discovered that multiple QuikTrip store managers reported a GardaWorld employee had asked for empty deposit bags. The State theorized at trial that Henry initially concealed the thefts by opening the tamper-proof bags collected from the QuikTrip location, removed a portion of the money from inside the bag, and then transferred the remaining currency into a new tamper-proof deposit bag. The State conceded it had no direct evidence showing Henry was the person who had stolen the money, but it noted that Henry was the common denominator in all of QuikTrip's reported shortages.

The State charged Henry with a single count of theft for unlawfully obtaining or exerting control over currency with a value of at least $25,000 but less than $100,000, a severity level 7 nonperson felony. A jury convicted Henry as charged. The district court sentenced Henry to an underlying 12-month prison sentence and placed him on probation for 60 months. The district court also ordered that Henry pay $78,315 in restitution.

Henry timely appeals.

ANALYSIS

On appeal, Henry raises two arguments. First, he argues there was insufficient evidence to support the monetary value element of his theft conviction. Second, he argues the district court imposed an unworkable restitution plan.

I.   DOES SUFFICIENT EVIDENCE SUPPORT THE MONETARY VALUE ELEMENT OF
     HENRY'S THEFT CONVICTION?

Henry first argues there was insufficient evidence to support the monetary value element of his theft conviction because the thefts occurred on 12 separate occasions and

5

no one theft was more than $25,000. Henry asserts that the single larceny doctrine did not permit his multiple felony thefts to be aggregated into a single higher severity level felony theft charge. As a result, he asks us to reverse his conviction.

Under the single larceny doctrine,

"[i]f property is stolen by a succession of takings from the same owner and from the same place, each taking is a separate crime if it results from a separate impulse or intent. If it appears, however, that a single incriminating impulse or intent is involved in the successive takings, the takings constitute a single larceny." *State v. Grissom*, 251 Kan. 851, Syl. ¶ 9, 840 P.2d 1142 (1992).

The single larceny doctrine is also known as the single impulse theory or single impulse rule. See *State v. McClanahan*, 251 Kan. 533, Syl. ¶ 1, 836 P.2d 1164 (1992) (single impulse rule); *Grissom*, 251 Kan. at 896 (single impulse theory).

The single larceny doctrine was first adopted in Kansas in *State v. Hall*, 111 Kan. 458, 207 P. 773 (1922). Hall was convicted of one count of grand larceny based on the theft of three items from two separate floors of a department store. In adopting the doctrine, the Kansas Supreme Court stated:

"'Where several articles are taken from the same owner at or about the same time by the same thief, the better practice, in spite of the fact that there are technically several takings, is to regard the takings as a single offense, and to indict and punish but once. This is clearly the case when the goods are taken at the same time by one act of taking. But it is equally true where the goods, although taken at substantially the same time, are taken independently.' (25 Cyc. 66.)" 111 Kan. at 459.

The *Hall* court held that "[t]he stealing of several articles upon different floors of a department store during one visit of the defendant thereto may properly be charged as a

6

single offense in one count of an information." 111 Kan. 458, Syl. ¶ 1. We view the single larceny doctrine, conceptually at least, as part of the body of law proscribing duplicity and multiplicity in charging documents. See *State v. Hood*, 297 Kan. 388, 390, 300 P.3d 1083 (2013) (multiplicity); *State v. Waufle*, 9 Kan. App. 2d 68, 70, 673 P.2d 109 (1983) (duplicity).

Henry relies on *State v. Ameen*, 27 Kan. App. 2d 181, 183, 1 P.3d 330, *rev. denied* 269 Kan. 934 (2000), for the proposition that the single larceny doctrine cannot be applied to a series of felony thefts, thus prohibiting the State from charging him with a single higher severity level felony theft instead of a series of lower severity level felony thefts. In *Ameen*, the defendant, as an employee, stole a total of $67,000 from a client over the span of a few months by transferring the client's money into Ameen's own disguised bank account on four separate occasions. Ameen was charged and convicted of four counts of felony theft.

On appeal, Ameen argued the district court erred by not instructing the jury on the single larceny doctrine because such an instruction would have allowed the jury to find that a continued impulse to steal had created the commission of a single theft rather than four distinct thefts. Citing to *McClanahan*, 251 Kan. 533, and *State v. Fox*, 242 Kan. 457, 749 P.2d 16 (1988), and without any detailed analysis, the *Ameen* panel held that the single larceny doctrine did not apply because the doctrine was "limited to cases allowing the State to charge a series of misdemeanor thefts as one felony theft where it appears the thefts resulted from a single incriminating impulse." 27 Kan. App. 2d at 183. The panel also held there was "no real possibility the jury would have returned a verdict other than guilty on all four separate counts." 27 Kan. App. 2d at 183. For reasons we will explain, we disagree with the *Ameen* panel's legal conclusion that the single larceny doctrine cannot apply in cases involving multiple felonious takings. See *State v. Fleming*, 308 Kan. 689, 706, 423 P.3d 506 (2018) (one Court of Appeals panel may disagree with another).

7

It is true that *Hall*'s progeny has followed a pattern of applying the single larceny doctrine when the amounts individually stolen would not amount to a felony charge but, in the aggregate, would total above the felony threshold. See, e.g., *McClanahan*, 251 Kan. at 534 (defendant charged with single count of felony theft based upon aggregate value of items taken); *Fox,* 242 Kan. at 459-60 (defendant charged with single count of felony unemployment fraud instead of multiple misdemeanors); *State v. Green*, 213 Kan. 547, 547-48, 516 P.2d 926 (1973) (defendant charged with single count of felony grand theft even though two of the three discrete takings were in amounts less than the felony limit); *State v. Roberts*, 210 Kan. 786, 787, 504 P.2d 242 (1972) (defendant charged with two counts of grand larceny for theft of two power drills from hardware store and 83 records from another store, despite each item having value less than felony limit), *cert. denied* 414 U.S. 832 (1973); *State v. Gordon*, 146 Kan. 41, 49, 68 P.2d 635 (1937) (where threshold of $20 required for felony, court clerk properly convicted of single count of felony embezzlement for series of takings of less than $20 totaling over $2,200).

However, our Supreme Court in *Hall* specifically stated that

> "'a series of larcenous acts, regardless of the amount and value of the separate parcels or articles taken, and regardless of the time occupied in the performance, may and will constitute, in contemplation of law, a single larceny, provided the several acts are done pursuant to a single impulse and in execution of a general fraudulent scheme.' (*West v. Commonwealth*, 125 Va. 747, 754.)" 111 Kan. at 459.

In *Fox*—one of the cases cited by the panel in *Ameen*—the district court dismissed the felony unemployment fraud counts against two defendants on the grounds that the complaints were defective and each defendant should have been charged with multiple misdemeanor counts rather than a single felony count. The State appealed the dismissals. The Supreme Court determined the trial court had erred in applying the single larceny doctrine as a matter of law and reversed, holding "the question of whether there was a single larcenous impulse is a question of fact to be determined by the jury." *Fox*, 242

8

Kan. at 465. The *Fox* court emphasized: "'The single larceny doctrine is a rule of evidence, not a rule of law, which permits but does not require the trier of fact to consider a series of larcenies, embezzlements, or other thefts to be the result of a single larcenous scheme.'" 242 Kan. at 462 (quoting *Green*, 213 Kan. at 549); see *McClanahan*, 251 Kan. at 535 ("single larceny doctrine is a rule of evidence"); *Roberts*, 210 Kan. at 791 (same). "'Each case must be determined upon its own special facts and circumstances.'" *Hall*, 111 Kan. at 459.

> If the evidence supports it, our Supreme Court has instructed:

> "The proper way to charge a defendant under these circumstances is to have an information containing several counts. One count should charge a felony under the single larceny doctrine, and there should be alternative misdemeanor counts for each payment received in the event the jury rejects the single larceny theory." *Fox*, 242 Kan. at 465.

The two key elements of the single larceny doctrine are:

> "(1) Separate acts of theft or embezzlement may constitute felony theft if the acts were the result of one larcenous impulse or plan.

> "(2) Whether or not the separate acts were the result of one larcenous impulse or plan is a question of fact to be determined by the jury." 242 Kan. at 462-63.

See *McClanahan*, 251 Kan. 533, Syl. ¶ 2. In other words, a jury's determination of whether "there are separate offenses or only a single offense should be based on whether the evidence discloses one general intent to steal or distinct and separate intents." *State v. Stoops*, 4 Kan. App. 2d 130, 139, 603 P.2d 221 (1979); see also *Waufle*, 9 Kan. App. 2d at 71 (single impulse rule applicable to criminal damage to property where defendant participated in series of destructive acts committed pursuant to single impulse). "[A] defendant could be convicted of separate thefts only if the evidence showed the offenses

9

to be separate and distinct and not committed pursuant to one intention, one impulse, or one plan." *Stoops*, 4 Kan. App. 2d at 139.

Our Supreme Court's analysis in *Roberts* bolsters our conclusion that the single larceny doctrine may be invoked whenever the facts warrant it. There, the defendant and another were accused of stealing two drills from a hardware store and 83 records from a department store. The State charged the defendant with two counts of grand larceny. The defendant argued he was entitled to an instruction for petty larceny for each taking given the value of each item allegedly taken. The Supreme Court agreed, holding that because the evidence could have supported a finding that his takings were not the result of a single continuing criminal impulse or intent, an instruction for petty larceny should have been given. A new trial was ordered. 210 Kan. at 792.

Henry was charged and convicted of severity level 7 nonperson felony theft contrary to K.S.A. 2016 Supp. 21-5801(a)(1), (b)(2), which proscribes theft of at least $25,000 but less than $100,000. The aggregate amount of Henry's alleged thefts totaled $78,315. If Henry had been charged with theft for each discrete taking, the severity level of each theft, save one, could have been properly charged as a severity level 9 nonperson felony theft proscribing thefts of at least $1,500 but less than $25,000 contrary to K.S.A. 2016 Supp. 21-5801(a)(1), (b)(3). One alleged theft, in the amount of $920, could have been charged as a class A nonperson misdemeanor contrary to K.S.A. 2016 Supp. 21-5801(a)(1), (b)(4).

Given the evidence, it seems clear to us that Henry should have been charged in the alternative with a lower severity level theft for each separate taking. At the very least, the jury should have been instructed on the elements of the single higher level theft offense charged by the State, which it was, and then, in the alternative, the jury should have been instructed on the single larceny doctrine and the elements of each lesser theft for each taking separately. It was not so instructed.

10

But there is a problem. At no time before the district court did Henry object to the charging document, nor did he ask for a jury instruction concerning the single larceny doctrine and the alternative lower severity level thefts. Henry also fails to make these arguments before us. Thus, we must conclude that Henry has waived or abandoned any claims of error concerning the charging document and the jury instructions. See *State v. Arnett*, 307 Kan. 648, 650, 413 P.3d 787 (2018) (issues not adequately briefed deemed waived or abandoned); *State v. Kelly*, 298 Kan. 965, 971, 318 P.3d 987 (2014) (issues not raised before district court cannot be raised on appeal). Accordingly, we are only left with Henry's sufficiency of the evidence argument.

> "'When sufficiency of the evidence is challenged in a criminal case, the standard of review is whether, after reviewing all the evidence in a light most favorable to the prosecution, the appellate court is convinced a rational factfinder could have found the defendant guilty beyond a reasonable doubt. Appellate courts do not reweigh evidence, resolve evidentiary conflicts, or make witness credibility determinations.' [Citation omitted.]" *State v. Chandler*, 307 Kan. 657, 668, 414 P.3d 713 (2018).

As we have outlined, the key factual determination is whether Henry's takings together constituted a single incriminating impulse thus supporting the State's single charge of severity level 7 theft as opposed to separate severity level 9 thefts and one misdemeanor theft. Although each taking occurred at different times over the course of several weeks and from separate QuikTrip stores, all the property stolen was taken from the same entity and certainly appeared to be part of the same scheme: opening each bag, removing money, and then returning a portion of the money in a new, resealed bag. Henry does not challenge the individual amount of each taking, nor does he challenge the aggregate amount of all the takings. When viewing the evidence in the light most favorable to the State, we conclude the jury could have determined that Henry's acts arose out of a single incriminating impulse or plan. Sufficient evidence supports Henry's conviction of severity level 7 nonperson felony theft contrary to K.S.A. 2016 Supp. 21-5801(a)(1), (b)(2).

## II.     DID THE DISTRICT COURT IMPOSE AN UNWORKABLE RESTITUTION PLAN?

Second, Henry argues that the district court imposed an unworkable restitution plan. Specifically, he argues that the restitution plan imposed was unworkable because it would take 43 1/2 years to complete.

We review a challenge to the workability of a restitution plan for an abuse of discretion. *State v. Holt*, 305 Kan. 839, 842, 390 P.3d 1 (2017). "Judicial discretion is abused if no reasonable person would agree with the decision or if the decision is based on an error of law or fact. To the extent this question requires interpretation of the restitution statute, our review is de novo." *State v. Meeks*, 307 Kan. 813, 816, 415 P.3d 400 (2018).

K.S.A. 2019 Supp. 21-6604(b)(1) provides that the district court "shall order the defendant to pay restitution, which shall include, but not be limited to, damage or loss caused by the defendant's crime, unless the court finds compelling circumstances that would render a plan of restitution unworkable." Under K.S.A. 2019 Supp. 21-6604(b)(1), "restitution is the rule and a finding that restitution is unworkable is the exception." *State v. Alcala*, 301 Kan. 832, 840, 348 P.3d 570 (2015). Henry bears the burden of coming forward "with evidence of 'compelling circumstances' that render the restitution plan unworkable." 301 Kan. at 840.

K.S.A. 2019 Supp. 21-6604(b)(1) does not define "unworkable." The Kansas Supreme Court has held that courts are to evaluate the workability of a restitution plan case-by-case. *Meeks*, 307 Kan. at 819-20. The Kansas Supreme Court has explained that

> "a defendant who argues that restitution is unworkable must come forward with evidence
> of his or her inability to pay. District courts should use this flexible guideline to evaluate
> each defendant's unique circumstances before deciding whether the defendant has shown

a plan would be unworkable. Some of the factors relevant to the court's inquiry will be the defendant's income, present and future earning capacity, living expenses, debts and financial obligations, and dependents. In some circumstances, the amount of time it will take a defendant to pay off a restitution order will also be relevant, especially if the defendant is subject to probation until the restitution is paid in full. In all circumstances, the district court should keep in mind the ultimate goals of restitution: compensation to the victim and deterrence and rehabilitation of the guilty. [Citations omitted.]" 307 Kan. at 820.

Of significance is the fact that the restitution statute specifically allows for probation to be continued indefinitely so a defendant may satisfy unpaid restitution: "If the defendant is ordered to pay full or partial restitution, the period may be continued as long as the amount of restitution ordered has not been paid." K.S.A. 2019 Supp. 21-6608(c)(7); see *State v. Herron*, 50 Kan. App. 2d 1058, 1067, 335 P.3d 1211 (2014) (Powell, J., concurring and dissenting) ("[O]ur legislature has specifically allowed for probation to be continued *indefinitely* so a defendant may satisfy unpaid restitution."), *rev. denied* 301 Kan. 1049 (2015).

Before sentencing, the State filed a motion seeking a restitution order for $78,315—the amount of cash Henry stole. The State also requested that the district court impose a 60-month term of probation and minimum monthly payments of $300 toward the requested order of restitution. Henry filed a written response to the motion in which he argued that such a plan would be unworkable because he would be unable to pay the requested monthly amount.

At sentencing, Henry testified that he paid monthly expenses of $1,551, which included $525 in rent, a $247 car payment, $200 for car insurance, $160 in utilities, $189 in child support, $80 for home insurance, and $150 for groceries. He informed the district court that he could not find employment since being fired from GardaWorld. He also testified that his fiancée made roughly $247 a week.

13

On cross-examination, Henry admitted that the car payment in question was for his fiancée's car, his name was not on the car insurance, and he did not personally make payments on the vehicle. This reduced his monthly expenses by $447. He also acknowledged that he had previously indicated total monthly expenses of $780 on his financial affidavit filed at the beginning of the case. Henry further admitted that his fiancée was paying the bills he testified to on direct examination, though he stated he would contribute if he were employed. Henry testified that he did not have any disabilities or health issues that would prevent him from working.

The State reiterated its request that the district court order Henry to pay at least $300 a month toward restitution. Henry's counsel argued that such a plan would be unworkable, as it would account for only $18,000 in restitution paid over a 60-month term of probation. The district court noted that probation could be extended beyond five years to allow Henry to pay restitution in full but stated that, in almost all similar cases, at the end of the probation term the district court would terminate probation and turn the matter over to collections if a defendant was making reasonable efforts to pay restitution. The district court asked what the defense would consider to be a reasonable plan, and Henry's counsel replied that a $50 monthly payment would be workable.

After hearing Henry's testimony and counsels' arguments, the district court ordered Henry to pay $78,315 in restitution in minimum monthly payments of $150. The district court gave Henry's probation supervisor the discretion to adjust the monthly payment depending on Henry's employment status. The district court emphasized that Henry was young, physically capable of working, appeared to have a good mind and can be creative, and that hopefully he would use that in a positive approach. The district court also expressed confidence that Henry's employment opportunities would likely improve over the course of his probationary period. Finally, in considering Henry's ability to pay, the district court noted that, at least at some point, Henry had $78,315 in cash—the money stolen from the QuikTrip deposits.

Henry does not challenge the workability of the monthly amount the district court ordered he pay—$150. In fact, he explicitly admits such an amount is workable. Rather, he argues the restitution plan is unworkable because it will take him 43 1/2 years to pay back the total amount he stole. He argues that a multidecade term of probation is, in essence, per se unreasonable.

In support of his argument, Henry relies on *Herron*, 50 Kan. App. 2d 1058, where the divided panel overruled the district court's order of restitution of $6,864.10, finding it unworkable. Herron made $680 a month; after her expenses, she had only $32 a week for "soap, medicine, and socks." 50 Kan. App. 2d at 1060. The majority held that "no reasonable person would agree that requiring Herron to pay either $6,864.10 in 18 months or $10 a month for the next 57 years is workable. The district court erred here by adopting only a total restitution amount while providing no plan—workable or otherwise—for paying for it." 50 Kan. App. 2d at 1065-66.

In *Meeks*, 307 Kan. at 817-19, the Supreme Court reviewed a series of Court of Appeals cases that addressed the workability of restitution plans and stated:

> "With these holdings, the Court of Appeals has defined an 'unworkable' restitution plan as one that is imposed when the defendant would not have the ability to pay towards restitution after covering basic necessities, when over half of the defendant's income would go to restitution and leave little for covering those necessities, or when the defendant would not pay back the restitution in a 'reasonable time frame.'" 307 Kan. at 819.

The Supreme Court cautioned against the "rigid definition of 'unworkable' that may be taking shape as a result of the numerous" decisions from this court. 307 Kan. at 819. In fact, the Supreme Court followed a similar line of thinking as the dissent of *Herron*, elaborating that K.S.A. 2017 Supp. 21-6604 does not define "unworkable" and that such an omission signifies the "legislature did not intend a rigid or unyielding definition." 307

Kan. at 819; see *Herron*, 50 Kan. App. 2d at 1066-68 (Powell, J., concurring and dissenting). The Supreme Court elaborated:

"Had the legislature envisioned a scenario in which courts only waived restitution when it would demand more than a certain percentage of a defendant's income or *time out of a defendant's life*, it could have written that into the statute. Because it did not, we must be confident that our decisions do not force such a result." (Emphasis added.) *Meeks*, 307 Kan. at 819-20.

Rather than looking to other cases, we will look to the precise facts at hand, as the Supreme Court indicated in *Meeks*. See 307 Kan. at 819-20 (evaluate restitution on case-by-case basis). Henry's argument that he will likely remain on probation is inconsistent with the district court's comments at sentencing. The district judge stated that his general practice was to terminate probation and turn the matter over to collections if a defendant had made reasonable progress toward the restitution payments during the probationary period. While that judge has since retired, Henry still has no support for his assertion that the restitution plan will likely create a multidecade term of probation. There is no way to know if Henry will be on probation for 43+ years because Henry's 60 months of probation have not yet concluded. At the end of his ordered term of probation, the district court may, in fact, turn the matter over to collections or it may extend probation to ensure Henry's payment of restitution. Importantly, should the district court elect to extend Henry's probation, such an action is explicitly permitted by K.S.A. 2019 Supp. 21-6608(c)(7). Moreover, the district court imposed a large amount of restitution because Henry stole a large amount of money. Logically, large restitution orders will take a longer time to repay. Given Henry's agreement that the monthly payment is reasonable and the Legislature's explicit allowance that a term of probation may be extended indefinitely to secure the payment of restitution, the district court imposed a workable restitution plan.

Affirmed.

16