NOT DESIGNATED FOR PUBLICATION

No. 124,031

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

STACEY LEANN CHIZEK,
*Appellant*.

MEMORANDUM OPINION

Appeal from Riley District Court; KENDRA LEWISON, judge. Opinion filed October 21, 2022. Affirmed in part, vacated in part, and remanded with directions.

*Peter Maharry*, of Kansas Appellate Defender Office, for appellant.

*David Lowden*, deputy county attorney, *Barry R. Wilkerson*, county attorney, and *Derek Schmidt*, attorney general, for appellee.

Before ARNOLD-BURGER, C.J., BRUNS and HURST, JJ.

PER CURIAM: Stacey Leann Chizek appeals from the district court's order requiring her to pay $360,539 in restitution following her conviction for one count of theft. Specifically, she argues: (1) Kansas' criminal restitution statutes violate her right to a jury trial under section 5 of the Kansas Constitution Bill of Rights and the Sixth Amendment to the United States Constitution; (2) the district court lacked statutory authority to order restitution for losses incurred in 2011 as the charge Chizek pled guilty to involved the theft of money only from 2012 to 2018; (3) the State failed to produce sufficient evidence supporting the order of restitution; (4) the restitution order was

1

unworkable given her financial circumstances; and (5) the district court improperly ordered that Chizek could not take employment that involved "any type of monetary or financial transactions" as a condition of probation. After reviewing the record, we find that the district court erred in ordering restitution in the amount of $15,579 for theft occurring in 2011, which was before the beginning date of the charged crime. As such, we remand the case to the district court with instructions to reduce the order of restitution by $15,579. However, we reject Chizek's other assertions of error and otherwise affirm the order of restitution and the conditions of probation imposed by the district court.

FACTUAL AND PROCEDURAL HISTORY

On June 30, 2020, the State charged Chizek with one count of severity level 5 theft of U.S. currency worth $100,000 or more from five rental properties. The theft allegedly occurred between January 1, 2012, and July 4, 2018. On March 15, 2021, Chizek entered a plea agreement in which she agreed to plead guilty to a reduced charge of severity level 7 theft, specifically theft in the amount between $25,000 and $100,000. Chizek admitted to taking U.S. currency during the alleged time frame during her employment with the rental management company. In pleading guilty, she agreed that she took the money from her employer by using an "electronic means of creating an inaccurate accounting of various rental payments."

As part of the plea agreement, the parties agreed to jointly recommend probation should Chizek fall within a presumptive prison box. In addition, Chizek agreed to pay restitution in an amount to be determined prior to sentencing. The district court set the matter over for sentencing and to determine the amount of restitution, which was anticipated to exceed $300,000.

On April 22-23, 2021, the district court held a hearing on both restitution and sentencing. The State presented testimony from Karen Roeser, the business manager of

2

five rental properties consisting of approximately 860 apartments from whom Chizek embezzled money. Roeser testified that Chizek started working for her in 2009 as a leasing agent, and she later became her leasing manager. As a leasing manager, Chizek had access to the accounting software that kept track of rent payments as well as the ability to make deposits on behalf of the company. Only Roeser and Chizek had the ability to manipulate the electronic entries in the computer software.

While conducting a review of the company books in 2018, Roeser found that cash rents that were documented in the receipts book had not been deposited in the bank and the money was missing. Roeser testified that she made this determination by reconciling written cash receipts for rent payments in a receipt book with electronic entries for rental payments in the computer and found that the cash receipts were not matching up with entries in the computer software. Roeser contacted the computer software company to generate a report of voided rent transactions. In her investigation, she found that Chizek was responsible for voiding the cash transactions on the software. Roeser testified that the voided transactions did not "show up in the system as far as rent collected."

The State introduced six exhibits—which the district court allowed into evidence—establishing monthly rental entries that were voided by Chizek from January 2011 through June 2018. The loss totaled $360,539, as supported by cash receipts that Roeser had reviewed and compared against the rent-charged records.

Chizek also testified at the hearing regarding her ability to pay restitution. Chizek testified that she had a net monthly income of $2,100, and her husband had a monthly income of $3,800, for a total household income of $5,900. In addition, Chizek's savings totaled $3,700. Regarding monthly expenses, Chizek testified she had a mortgage payment of $1,100, a cell phone bill of $241, and the total for household utilities of $387. Chizek paid $120 a month toward her student loan and $657 a month for her car payment, which would be paid off by the end of the year. Chizek and her husband have

one child. Chizek testified that she could probably be responsible for restitution payments of about $500 a month. When asked how she came up with $500 by the district court judge, Chizek said it was what she had left over at the end of the month.

Chizek's counsel argued that the amount of restitution requested was unworkable, especially considering the number of years it would take to pay off the entire amount of $360,539. The State maintained that it was important to order restitution in the entire amount lost by the victim in this case. The State recognized the amount requested was large, but it noted that the district court could extend the term of probation if necessary. Michael Hill, the owner of the property management company, gave a statement about the losses he suffered as a victim of the crime, including lost income to his family, the inability to make timely upgrades to the apartments, the inability to give raises and increased benefits to his employees, and the inability to give charitable donations. Hill requested the district court order Chizek to pay restitution for the entire amount lost.

After hearing the testimony and argument from counsel, the district court ruled the State proved by a preponderance of the evidence that Chizek had taken $360,539 in rent payments from 2011 to 2018. The court ordered Chizek to pay restitution in the amount requested by the State. It ordered restitution as a condition of probation in the amount of $360,539, with an immediate payment of $2,000 for court costs and restitution, and $800 due monthly after that initial lump sum. In finding the payment workable, the district court noted that Chizek's car payment was "on the high side" and that it was close to being paid off. The district court found that the payment of $800 per month was workable "based on her household income, and her employment, and the expenses that she outlined in her testimony."

The district court also ordered as a condition of probation that Chizek not take any employment "which included being involved with any type of monetary or financial transactions." Defense counsel objected to this restriction. However, Chizek said it would

4

not affect her current job, and the district court stated the condition could be modified if needed.

The district court sentenced Chizek to 12 months in prison but released her on probation for a term of 24 months. Chizek filed a timely notice of appeal.

ANALYSIS

On appeal, Chizek raises five issues relating to the district court's order of restitution. We will examine each in turn. But first we set out the law and our standard of review.

Under K.S.A. 2021 Supp. 21-6604(b)(1), a sentencing court is required to "order the defendant to pay restitution, which shall include, but not be limited to, damage or loss caused by the defendant's crime." In addition, K.S.A. 2021 Supp. 21-6607(c)(2) provides that the district court shall order the defendant to "make reparation or restitution to the aggrieved party for the damage or loss caused by the defendant's crime in accordance with K.S.A. 2021 Supp. 21-6604(b), and amendments thereto . . . ." An appellate court's consideration of an order of restitution may involve three standards of review. First, we review questions concerning the "'amount of restitution and the manner in which it is made to the aggrieved party'" for an abuse of discretion. *State v. Shank*, 304 Kan. 89, 93, 369 P.3d 322 (2016). Second, we review a district court's factual findings relating to the causal link between the crime committed and the victim's losses for substantial competent evidence. Finally, we have unlimited review over legal questions involving the interpretation of Kansas statutes. 304 Kan. at 93.

1. *Kansas' criminal restitution statutes are constitutional*

Chizek first argues that Kansas' restitution statutes violate section 5 of the Kansas Constitution Bill of Rights because they violate her right to have a jury determine the amount of damages caused by her crime. She also claims the restitution statutes violate her Sixth Amendment right to a jury trial under the United States Constitution because the provisions allowed the district court to make findings of fact that increased the penalty for her crime beyond the statutory maximum. See *Apprendi v. New Jersey*, 530 U.S. 466, 476, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000).

Chizek failed to argue that the order of restitution was unconstitutional at the district court level. Generally, constitutional grounds for reversal asserted for the first time on appeal are not properly before the appellate court for review. *State v. Pearce*, 314 Kan. 475, 484, 500 P.3d 528 (2021). There are several exceptions to the general rule, one being that consideration of the theory is necessary to serve the ends of justice or to prevent denial of fundamental rights. *State v. Allen*, 314 Kan. 280, 283, 497 P.3d 566 (2021). Chizek invokes this exception, claiming the statutes violate her fundamental right to a jury trial. But since briefing in this case, Chizek's argument has been addressed and rejected by our Supreme Court.

In *State v. Arnett*, 314 Kan. 183, 189-95, 496 P.3d 928 (2021), *cert. denied* 142 S. Ct. 2868 (2022), the Kansas Supreme Court held that the Kansas criminal restitution statutes do violate section 5 of the Kansas Constitution Bill of Rights to the extent that they allow conversion of restitution orders into civil judgments, thus bypassing the traditional function of juries to determine civil damages. But the Kansas Supreme Court concluded that the proper remedy was to sever the offending portions of the restitution statutory scheme rather than vacating the criminal order of restitution. 314 Kan. at 194-95. As such, the severance of the unconstitutional provisions allows an order of

restitution in a criminal case to stand as constitutionally valid. 314 Kan. at 194-96; see *State v. Owens*, 314 Kan. 210, 242-44, 496 P.3d 902 (2021).

As to the Sixth Amendment to the United States Constitution, the *Arnett* majority noted that numerous federal circuit courts, state courts, and our own Court of Appeals have examined this issue and refused to extend *Apprendi* and its progeny to orders of restitution. "We are content to side with the majority of the circuit courts of appeal." *Arnett*, 314 Kan. at 188. Accordingly, the court found that the Kansas restitution scheme does not violate the Sixth Amendment.

This court is duty-bound to follow Kansas Supreme Court precedent unless there is some indication that the Supreme Court is departing from its previous position. *State v. Rodriguez*, 305 Kan. 1139, 1144, 390 P.3d 903 (2017). We find no such indication here. Chizek's challenge to the constitutionality of the Kansas restitution scheme fails.

2. *The district court lacked the authority to order restitution for losses incurred in 2011.*

Next, Chizek argues that the district court lacked the statutory authority to order restitution for losses incurred in 2011 because the charge Chizek pled guilty to involved the theft of money from January 1, 2012, to July 4, 2018. The State concedes that this case should be remanded to the district court for the purpose of adjusting the order of restitution to exclude losses incurred in 2011 in the amount of $15,579. We agree.

Although we note this issue is also raised for the first time on appeal, Chizek asserts another recognized exception to our rule against considering issues raised for the first time on appeal—"the newly asserted theory involves a question of law arising on admitted facts, and the record is sufficient for a final determination on this issue." See

*Allen*, 314 Kan. at 283. We agree that this exception would apply and elect to consider the merits of Chizek's position.

Under K.S.A. 2021 Supp. 21-6607(c)(2), a sentencing court shall order the defendant to "make reparation or restitution to the aggrieved party for the damage or loss caused by the defendant's crime." Our Supreme Court has found that a district court "may only order restitution for losses or damages caused by the crime or crimes for which the defendant was convicted unless, pursuant to a plea bargain, the defendant has agreed to pay for losses not caused directly or indirectly by the defendant's crime." *State v. Dexter*, 276 Kan. 909, 919, 80 P.3d 1125 (2003). Here, the crime of conviction covered losses from January 1, 2012, through July 4, 2018. However, the district court ordered restitution for losses incurred in 2011. We note that the exhibits considered by the district court in this case supporting the order of restitution include detailed entries regarding the financial losses sustained by the property management company, including the dates on which each loss was incurred. Chizek agreed to pay restitution as part of her plea agreement, but she did not agree to pay a certain amount or restitution outside of the dates of her crime of conviction. The State concedes that the order of restitution including losses incurred during 2011 is improper. As such, we vacate the order of restitution and remand to the district court with directions to reduce the total amount of restitution by $15,579. The parties agree that the reduction of restitution in this amount is proper, and the exhibits also support the reduction of restitution for losses incurred in 2011.

3. *The restitution order is supported by sufficient evidence.*

Third, Chizek argues the State failed to produce sufficient evidence to support the district court's order of restitution. The State contends that the testimony and exhibits in this case—specifically the evidence of the cash receipts, lack of cash deposits, and the records of the voided transactions—constitute reliable evidence upon which the district court could rely in setting the amount of restitution.

8

We review arguments involving the amount of restitution for an abuse of discretion. *Shank*, 304 Kan. at 93. The district court abuses its discretion when its action (1) is arbitrary, fanciful, or unreasonable; (2) is based on an error of law; or (3) is based on an error of fact. *State v. Levy*, 313 Kan. 232, 237, 485 P.3d 605 (2021). In reviewing an order of restitution, we look for substantial competent evidence in support of the district court's factual findings. *Shank*, 304 Kan. at 93. Substantial competent evidence refers to legal and relevant evidence that a reasonable person would accept as being adequate to support a conclusion. *State v. Talkington*, 301 Kan. 453, 461, 345 P.3d 258 (2015).

In concluding that the evidence presented by the State was sufficient to support the order of restitution, the district court stated:

> "[Roeser] testified the only transactions included in those exhibits were ones that she found receipts in the receipt book for cash payments of rent that corresponded with voided rent payments in their computer. Those rent payments, according to her testimony and the business records, were voided by the defendant as indicated by her initials S.L., at the time were her initials, and since Ms. Roeser didn't have the ability to run the report in the form in which it was presented in State's Exhibits 1 through 5, she did turn to their software provider to assist with running the report to consolidate the data from their business records.
>
> . . . .
>
> "In my mind the State connected all of the dots between these documents and the testimony and what happened, and they proved the restitution, and therefore the Court is going to order . . . a total amount of restitution of $360,539.
>
> "And I would just add that the testimony was uncontroverted. There was no testimony or evidence presented to the contrary that this was the amount of the restitution."

The district court has the discretion to determine the amount of restitution so long as its restitution order is supported with evidence in the record. *Shank*, 304 Kan. at 93.

9

The "'rigidness and proof of value that lies in a civil damage suit does not apply in a criminal case,'" but the district court's order of restitution "'must be based on reliable evidence which yields a defensible restitution figure.'" *State v. Hunziker*, 274 Kan. 655, 660, 56 P.3d 202 (2002) (quoting *State v. Casto*, 22 Kan. App. 2d 152, 154, 912 P.2d 772 [1996]). Rather than addressing whether the State presented substantial and reliable evidence in support of the restitution figure, Chizek's argument instead attacks the sufficiency of the evidence supporting the elements of the crime, which is not an issue that can be addressed on appeal after a guilty plea.

Here, the State presented substantial competent evidence in support of the district court's order of restitution. As noted by the district court, Roeser testified as to the cash receipts, the missing cash deposits, and the altered entries in the tracking software. The State introduced Exhibits 1 through 6 as business records documenting the losses sustained by the property management company. Roeser also testified that only herself and Chizek had the ability to delete entries in the program that kept track of rental deposits. Notably, Chizek admitted to taking U.S. currency during the alleged time frame during the course of her employment with the rental management company by using an "electronic means of creating an inaccurate accounting of various rental payments" from her employer.

Under these circumstances, we find substantial, reliable evidence supporting the district court's order of restitution for the theft from the property management company from January 1, 2012, through July 4, 2018. As noted above, the restitution order will need to be adjusted by the district court on remand to eliminate any restitution ordered from losses incurred in 2011.

4. *The district court did not abuse its discretion by ordering an unworkable restitution plan.*

Chizek next contends that the district court abused its discretion by imposing an unworkable restitution plan. Chizek claims that with an income of only $2,100, the amount is unworkable. She asks this court to vacate the district court's order of restitution and condition her probation upon the payment of a reduced restitution judgment. In response, the State maintains the district court's order finding that Chizek could pay a monthly amount of $800 toward restitution was reasonable and not an abuse of discretion based on the testimony regarding her household income and expenses.

Once convicted of a crime, a defendant is financially responsible for the damages caused by their crime, unless the defendant can present compelling circumstances to render the restitution repayment plan unworkable. *State v. Holt*, 305 Kan. 839, 842, 390 P.3d 1 (2017). Under K.S.A. 2021 Supp. 21-6604(b)(1), a sentencing court must order restitution unless it finds compelling circumstances which would render the plan of restitution unworkable. The validity of an order of restitution is the rule, and a finding that restitution is unworkable is the exception. *State v. Alcala*, 301 Kan. 832, 840, 348 P.3d 570 (2015). Because the Legislature did not intend a rigid definition of "'unworkable,'" courts evaluate restitution plans on a case-by-case basis. *State v. Meeks*, 307 Kan. 813, 819-20, 415 P.3d 400 (2018).

Our review of whether a district court's order of restitution is workable is limited to whether the district court abused its discretion. *State v. Tucker*, 311 Kan. 565, 566, 465 P.3d 173 (2020). A district court abuses its discretion when its decision is: (1) arbitrary, fanciful, or unreasonable; (2) based on an error of law; or (3) based on an error of fact. *Levy*, 313 Kan. at 237. The party asserting the district court abused its discretion bears the burden of showing such abuse of discretion. *State v. Crosby*, 312 Kan. 630, 635, 479 P.3d 167 (2021); *Meeks*, 307 Kan. at 816. Finally, appellate courts exercise unlimited review

11

of legal questions involving the interpretation of the underlying statutes. *State v. Martin*, 308 Kan. 1343, 1350, 429 P.3d 896 (2018).

Chizek carries the burden to show that the district court abused its discretion by imposing an unworkable restitution order, whether the district court's order included payment of restitution in whole or in part, by a one-time payment, or through installments. See *Meeks*, 307 Kan. at 816, 818 (citing *State v. Herron*, 50 Kan. App. 2d 1058, 1064-65, 335 P.3d 1211 [2014]). Chizek asserts that payment plans that cannot be completed within a reasonable timeframe, with reasonable monthly payments, are unworkable. 50 Kan. App. 2d at 1064-65.

In *Herron*, a panel of this court held that the district court abused its discretion by failing to consider the defendant's extreme poverty when ordering restitution. 50 Kan. App. 2d at 1064. In that case, the defendant was left with only $32 per week after paying her monthly expenses. The court found the order of restitution unworkable, stating that if the defendant "paid the $10 per month the State suggested, she would be making payments for 57 years—an inordinately long time compared to her 18-month probation." 50 Kan. App. 2d at 1065. Chizek also cites *State v. Hambright*, 53 Kan. App. 2d 355, 366, 388 P.3d 613 (2017), *overruled on other grounds* 310 Kan. 408, 447 P.3d 972 (2019), in which a panel of this court found a plan which required the defendant to pay over half of his monthly income toward restitution to be unworkable because there would be little left for the necessities of living.

In *Meeks*, our Supreme Court noted that district courts should evaluate unworkability on a case-by-case basis, using a flexible guideline to evaluate each defendant's unique circumstances. Some of the factors the district court should consider are the defendant's income, present and future earning capacity, living expenses, debts and financial obligations, and dependents. In addition, the amount of time it will take the defendant to repay the restitution may be relevant if the term of probation continues until

12

the restitution balance is paid in full. 307 Kan. at 820. The district court should keep in mind the ultimate goal of restitution, which is to compensate the victim along with "deterrence and rehabilitation of the guilty." 307 Kan. at 820.

Chizek argues that the district court's plan of a minimum monthly payment of $800 per month toward a total restitution order of $360,539 is unworkable in light of her monthly income and the total amount of years it would take to pay the total amount. However, as noted by the State, Chizek claimed she was capable of paying $500 per month because that was the amount of money she had left after meeting her monthly expenses. In addition, she testified that her car—with a monthly payment of $657 per month—was close to being paid for in whole. In addition, she had $3,700 in savings. Although on appeal Chizek focuses on her personal monthly income of $2,100, the district court properly considered her household income and expenses in finding that a monthly payment of $800 was reasonable.

In addition, we reject Chizek's argument that restitution is unworkable due to the length of time it would take to pay off the full amount. In *State v. Henry*, 57 Kan. App. 2d 846, 857-59, 461 P.3d 849 (2020), a panel of this court rejected a similar argument. In that case, Henry was an armored car driver who stole $78,315 over a 5-week period from QuikTrip stores. The district court ordered Henry to pay the full restitution amount of $78,315 with a minimum monthly payment of $150 while giving Henry's probation officer the ability to adjust the payments depending on employment status. The district court rationalized that Henry was young, capable of working, and at some point possessed the $78,315 in cash that he stole from the deposits. On appeal, Henry did not focus on the ability to make the monthly payments, but instead cited the *Herron* case and argued that it would take 43.5 years to pay back the full restitution at that rate. A panel of this court found the restitution order to be workable, noting there was no certainty that Henry would be on probation the entire time and pointing out that in K.S.A. 2019 Supp.21-6608(c)(7), the Legislature explicitly permitted probation to be extended until

13

restitution is paid off. 57 Kan. App. 2d at 858-59. The *Henry* court reasoned that "the district court imposed a large amount of restitution because Henry stole a large amount of money. Logically, large restitution orders will take a longer time to repay." 57 Kan. App. 2d at 859.

In this case, Chizek stole over $360,000 from her employer over a period of seven to eight years. As in *Henry*, Chizek has the ability to work, a substantial household income, and was in possession of the cash stolen from her employer at some point in time. This case can be distinguished from *Herron* because Chizek is not in extreme poverty with very little ability to pay towards restitution.

Our review of the record confirms that the district court appropriately considered the factors set forth by our Supreme Court in *Meeks* when considering Chizek's objection to the State's plan for restitution payments as unworkable. Unlike in *Herron*, the district court did not disregard the defendant's personal circumstances before reaching its decision. Instead, the district court considered Chizek's household income, her potential for earning additional income, and her debts and monthly expenses and obligations before imposing restitution. The district court explicitly rejected Chizek's claim that the plan was unworkable and found that Chizek was likely capable of paying off the restitution amount more quickly than the minimum monthly payment requirement.

Chizek asserts the plan was unworkable, but she fails to persuasively argue that the plan was unworkable in light of her household income, earning potential, expenses, and other financial obligations. As such, Chizek fails to explain how the district court abused its discretion in its order of restitution. Although we acknowledge that the monthly payment of $800 is significant, we conclude Chizek has failed to explain or meet her burden to show that the district court abused its discretion when it denied her request for a lower amount of restitution. Accordingly, we affirm the district court's order of restitution with the exception of the amount that can be attributed to losses from 2011.

14

5. *The district court did not abuse its discretion by placing restrictions on Chizek's employment.*

Finally, Chizek argues that the district court abused its discretion by imposing a probation condition that Chizek could not take employment involving any type of monetary or financial transactions. Chizek complains that this restriction excludes her from a vast number of jobs, minimizes her potential earning ability, and results in making it more difficult to satisfy her restitution order. She contends the district court's restriction on employment "is not reasonably related to the goals of probation" and "actively undercuts the goal of full payment of the restitution ordered."

As a condition of probation, the district court ordered that Chizek not take any employment "which included being involved with any type of monetary or financial transactions." Defense counsel objected to this restriction. However, Chizek said it would not affect her current job, and the district court noted the condition could be modified if needed.

A court may impose any probation condition that it deems proper. K.S.A. 2021 Supp. 21-6607(b). It has broad authority to impose conditions of probation as long as the conditions do not constitute an abuse of discretion or violate statutory law. See *State v. Collins*, 303 Kan. 472, 476, 362 P.3d 1098 (2015); *State v. Calhoun*, 28 Kan. App. 2d 340, 342, 19 P.3d 179 (2000). Conditions of probation should generally be upheld so long as they are reasonably related to the rehabilitative goals of probation, the protection of the public, and the nature of the offense. See *State v. Schad*, 41 Kan. App. 2d 805, Syl. ¶¶ 7-8, 206 P.3d 22 (2009); *State v. Evans*, 14 Kan. App. 2d 591, 592, 796 P.2d 178 (1990). Chizek makes no allegation of a statutory violation, so we review the employment restriction imposed as a condition of her probation for an abuse of discretion.

Our Supreme Court has stated:

15

"A condition of probation will not be held invalid unless it (1) has no reasonable relationship to the crime of which the offender was convicted, (2) relates to conduct which is not in itself criminal, and (3) requires or forbids conduct which is not reasonably related to future criminality. Conversely, a condition of probation which requires or forbids conduct which is not itself criminal is valid if that conduct is reasonably related to the crime of which the defendant was convicted or to future criminality." *State v. Lumley*, 267 Kan. 4, 14, 977 P.2d 914 (1999).

In *State v. Jones*, No. 118,458, 2018 WL 6005157, at *5 (Kan. App. 2018) (unpublished opinion), a panel of this court found that a "restriction on employment is a valid exercise of the district court's discretion." The court noted that Kansas does not have controlling authority on the issue of whether an employment restriction is unreasonable, but the panel examined several out-of-state cases and found employment restrictions can be upheld so long as the restriction is reasonably related to the rehabilitative goals of probation. 2018 WL 6005157, at *4-5.

Here, Chizek admitted to taking money from her employer by using an "electronic means of creating an inaccurate accounting of various rental payments" from 2012 to 2018. With this in mind, the district court imposed a probation condition restricting Chizek from taking a job involving any type of monetary or financial transactions. Although Chizek objected to the restriction, she admitted that her current job did not involve monetary or financial transactions. In response to her objection, the district court noted that conditions of probation could be modified, and the court welcomed a motion for modification. The court stated: "Well, probation conditions can be modified, and if there is a specific scenario where the employer has been informed and wants to take on that risk then certainly there could be a motion made to the Court to address that on a case-by-case basis."

Because Chizek's crime involved stealing money from her employer over the course of several years, we find the restriction imposed appears reasonably related to the

rehabilitative goals of probation and also provides protection to the public, including any future employers. Under these circumstances, Chizek has failed to show that the district court abused its discretion by imposing this condition of probation.

Affirmed in part, vacated in part, and remanded with directions.